Rufus SOWELL, Petitioner,

v.

The TRAVELERS INSURANCE CO.,
Respondent.

No. A–9398.

Supreme Court of Texas.

Nov. 13, 1963.

Rehearing Denied Feb. 5, 1964.

Fulmer, Fairchild & Badders, Nacogdoches, for petitioner.

Garrison, Renfrow, Zeleskey, Cornelius & Rogers, Lufkin, for respondent.

GREENHILL, Justice.

This is a workmen's compensation case, brought by Rufus Sowell against The Travelers Insurance Company. The trial court entered judgment for Sowell upon jury findings that he had sustained 25 per cent partial incapacity for a period of fourteen

months. Sowell appealed, contending for a larger recovery, but the Court of Civil Appeals affirmed. 363 S.W.2d 350.

Sowell alleged that on November 12, 1960, while in the course of his employment, he received an injury to his back which resulted in his total and permanent incapacity. Travelers' answer contained a general denial and alternative pleas to the effect that Sowell's alleged incapacity was caused solely, or partially, by prior injuries and infirmities.

Sowell testified that on November 12, 1960, while at work on his employer's poultry farm, he injured his back emptying a tub of water. Two days later he went to his family physician, Dr. Pennington, who placed him in the hospital where he remained for approximately three weeks. Dr. Pennington testified that in his opinion Sowell had sustained a ruptured disk in the lumbar region of his back. He was of the opinion that Sowell was totally disabled from performing manual labor as a result of the injury. He stated that Sowell had been suffering from a natural arthritic condition in his back for several years. He had discovered arthritic changes from X-rays taken in 1956 and 1960. He testified that such arthritic changes are disabling if they are painful or cause stiffness; that in May of 1960, Sowell had complained of severe shoulder pains which he had diagnosed as osteoarthritis; that Sowell's arthritic condition was just as prevalent in his lower back; and that arthritis and a back injury will create a likelihood of complications or prolonged disability.

It was also revealed that Sowell had received two prior compensable injuries. In 1950, his left leg was broken. In 1956, he suffered an injury to his lower back while swinging an axe. He was treated on both of these occasions by Dr. Pennington.

The jury found that Sowell's injury of November 12, 1960, resulted in partial incapacity for a period of fourteen months. Special Issue No. 14 inquired whether Sowell's leg injury of 1950 had contributed to his present incapacity. The jury found that it had. In answer to Special Issue No. 15, the jury found that the lower back injury of 1956 also contributed to Sowell's present incapacity. Special Issue No. 16 was submitted and answered as follows:

"From a preponderance of the evidence, what percentage, if any, of plaintiff's incapacity, if any you have found, is due solely to the alleged injury of November 12, 1960? Answer by stating the percentage, if any. Answer: 25%."

In its charge the trial court gave the following definition:

"You are instructed that by the term 'INJURY' as used in this Charge, is meant damage or harm to the physical structure of the body, and such diseases or infection as naturally result therefrom, or the lighting up, acceleration or aggravation of any disease or condition previously existing, by reason of such damage or harm to the physical structure of the body."

Sowell, as the petitioner in this Court, questions the correctness of Special Issue No. 16 as it was submitted by the trial court.

■ Prior to Sowell's latest injury of November 12, 1960, he received two separate compensable injuries, the broken leg of 1950 and the lower back injury of 1956. Travelers, therefore, was entitled to the submission of Special Issues No. 14 and No. 15. Article 8306, § 12c, Vernon's Ann. Civ.St. The jury found that these two prior compensable injuries contributed to the incapacity suffered by Sowell as a result of the injury of November 12, 1960. Special Issue No. 16 was calculated to determine the percentage of incapacity which was attributable to his last injury of November 12, 1960.

Sowell's complaint is directed to the use of the word "solely" in that issue. He con-

tends that "solely" incorrectly precluded the jury from considering his previously existing arthritic condition in determining the amount of his present incapacity. As Issue No. 16 was submitted, the jury could consider only the incapacity resulting *solely* from the damage to Sowell's body by the occurrence of November 12, 1960. Travelers argues that the trial court's definition of the term "injury" corrected any supposed error in Issue No. 16. The definition, set out above, allowed the jury to consider the incapacity resulting from the physical trauma which occurred on November 12, 1960, the diseases or infections naturally resulting therefrom, and the acceleration or aggravation of previously existing diseases or conditions. Sowell asserts that in spite of the definition, the jury was still required to exclude from its consideration any incapacity produced concurrently by the injury *and* the arthritic condition. Under the definition, the pre-existing arthritic condition must have been accelerated or aggravated to be taken into account in ascertaining Sowell's incapacity. No such limitation exists in the cases, as will be discussed below.

■ An employee is entitled to compensation for an injury received in the course of his employment, regardless of the fact that he may have been previously suffering from a disease which contributed to the incapacity resulting from said injury. Texas Employers' Insurance Ass'n v. Parr, 30 S.W.2d 305 (Tex.Comm.App., 1930); Texas Indemnity Ins. Co. v. Staggs, 134 Tex. 318, 134 S.W.2d 1026 (1940); St. Paul Fire & Marine Ins. Co. v. Murphree, 163 Tex. 534, 357 S.W.2d 744 (1962).

In the Parr case, it was said:

"The law [is] that an employee is entitled to compensation for an injury received in the course of employment, notwithstanding the employee may have been afflicted with a disease or diseases which had substantially contributed to his condition * * *."

We think Special Issue No. 16 probably prevented the jury from arriving at a result in harmony with this rule of law.

The insurance company is correct in its assertion that issues similar to No. 16 here have been held to be proper in other cases. Thus in Texas Indemnity Insurance Co. v. Perdue, 64 S.W.2d 386 (Tex.Civ.App., 1933, wr. ref.), the insurer was held to be entitled to issues as to whether there had been previous compensable injuries to plaintiff, "and what percentage of such incapacity resulted *alone* from the injuries" complained of. But there were no noncompensable injuries or pre-existing diseases in that case, and the point raised here was not raised in the Perdue case. Nor was the definition given in this case at issue in the Perdue case.

In Texas Employers Insurance Association v. Griffis, 141 S.W.2d 687 (Tex.Civ. App., 1940, no writ), there was evidence of prior injuries, and the special issue on the latest injury there in question was worded, "What percentage of plaintiff's present incapacity * * * is attributable *solely* to the alleged injury of December 20, 1938?" The jury answered, "100%," and that prior injuries did *not* contribute to plaintiff's incapacity. Moreover there was no evidence of previously existing disease or condition. Hence that case is clearly distinguishable. Similarly, in Travelers Insurance Co. v. Glenn, 358 S.W.2d 136 (Tex. Civ.App., 1962, n. r. e.), there had been a former compensable injury. The Court of Civil Appeals indicated that the trial court could have had the jury determine the percentage of incapacity which was *solely* due to the prior injury, or it could have had the jury find the percentage of incapacity which was due *solely* to the then present injury. Again, no previous noncompensable injury or disease was involved; and, again, the point here present was not raised. There are other cases of a similar nature which are distinguishable on similar grounds. Traders & General Insurance Co. v. Watson, 131 S.W.2d 1103 (Tex.Civ.App., 1939, dism., judg. corr.).

The facts in this case present a distinctive situation. Dr. Pennington testified that Sowell's prior arthritic condition could concur with his injury to increase and prolong his incapacity. This evidence clearly invoked the substantive rule of law announced in the Parr case. The problem of the trial court was to frame an issue from which the jury could determine that amount of Sowell's present incapacity which had resulted from both his injury of November 12, 1960, and his previously existing diseases and physical conditions which contributed to his incapacity. The insertion of the word "solely" into Special Issue No. 16 was evidently intended to exclude from the jury's consideration that portion of Sowell's incapacity resulting from the two prior compensable injuries. But this wording gave an overreaching effect to the issue.

Sowell requested the submission of a special issue which inquired what percentage of his present inacapacity resulted from the prior compensable injuries of 1950 and 1956. This, in our opinion, would have been the better way to submit this phase of the case to the jury. With these facts determined, the insurance company is relieved of paying compensation for previous injuries which contribute to the plaintiff's incapacity, and at the same time, the plaintiff is given the benefit of the holding in the Parr case.

As stated above, there have been cases in which the wording employed in Special Issue No. 16 has been held to be acceptable. It may be proper where there is evidence only of prior compensable injuries and none of a previously existing disease or physical condition or previous noncompensable injury which might have been a contributing cause of incapacity. But, it is in cases such as this, where there is evidence of prior compensable injuries and of previously existing diseases or physical conditions, that the trial court must protect not only the insurance company's rights under § 12c of Article 8306, but also the claimant's rights under the Parr case. For the foregoing reasons, the judgments of the trial court and the Court of Civil Appeals must be reversed and the cause remanded for a new trial.

In view of another trial, we will notice other points of error asserted by Sowell. His second and third points are directed to the trial court's submission of Special Issue No. 14. That issue asked if Sowell's broken leg of 1950 contributed to his present incapacity. He contends that there was no evidence that the leg injury contributed in any way to his present incapacity. Dr. Pennington testified that a broken leg may cause back trouble; that the fractured leg might become shorter causing a tilting of the pelvis which could eventually lead to back trouble. He stated, however, that he had never measured Sowell's legs and had never noticed him to have one leg shorter than the other. Sowell testified that he was off work for a year because of his broken leg. Dr. Pennington said that after this leg injury he had been of the opinion that Sowell would suffer a 25 per cent partial loss of the use of said leg. The doctor did not express an opinion as to the duration of the partial incapacity. On *this* trial, he said that his memory did not go that far back; that his records did not reflect a *permanent* partial loss. But he said he did send Sowell back to work with the opinion that he would *"thereafter* have a 25% partial loss of use of the left leg." The foregoing testimony constitutes some evidence that Sowell's leg injury of 1950 contributed to his present incapacity.

Sowell next contends that Special Issue No. 14 should not have been submitted to the jury because his leg injury of 1950 was a *specific* injury, while the latest injury of November 12, 1960, was a *general* one to his back; and that under these circumstances, § 12c of Article 8306 is not applicable.

Section 12c says, in part:

"If an employee who has suffered a previous injury shall suffer a subse-

quent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association [the insurance company] * * * shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury * * *."

Sowell asserts that compensation for general injuries is predicated upon loss of earning capacity, while compensation for specific injuries is awarded regardless of whether such injury causes any impairment of earning capacity; and that therefore a specific injury (not involving incapacity, as such) cannot be offset under § 12c against a general injury where the test is loss of capacity. He points out that a specific injury cannot be used to show general incapacity unless the injury extends to and affects the body. Hence he argues that it was not intended that the prior specific injuries should be offset against a general injury to the body. In support of this proposition he cites Traders & General Insurance Co. v. Gibbs, 229 S.W.2d 410 (Tex. Civ.App.1950, n. r. e.), and Texas Employers' Insurance Assn. v. Pierson, 135 S.W.2d 550 (Tex.Civ.App.1940, no writ). Insofar as these authorities bear on the present case, they merely stand for the proposition that where a prior compensable injury does not contribute to a claimant's incapacity resulting from a subsequent injury, the provisions of § 12c have no application. There must, of course, be a finding that the prior compensable injury does contribute to the incapacity of the plaintiff.

In the Gibbs case, the employee had previously lost his left eye. He returned to work and later an 850-pound joint of pipe fell on his head and fractured his skull. In the trial court, plaintiff recovered for total and permanent incapacity. On appeal, the insurance company contended that under § 12c, the plaintiff could not recover "total and permanent" for a general injury because he had previously suffered a compensable specific injury. The court disagreed.

The matter was resolved, however, on the basis of a jury finding, supported by evidence, that the prior specific injury did not impair his earning capacity at the time of the second injury. The facts were similar in the Pierson case: an eye injury and a subsequent chest injury. There was a finding that the previous eye injury did not contribute to the incapacity caused by the chest injury. It was held that § 12c was therefore not applicable.

We may agree with Sowell's assertion that recovery may be had for specific injuries under § 12 of Article 8306 without loss of earning capacity, whereas loss of capacity is required to be shown for a general injury. But it has been stated that the Legislature in fixing particular amounts of recovery for specific injuries has simply standardized and simplified the compensatory scheme for the enumerated specific injuries. In thus providing for particular amounts for specific injuries, it has obviated trials and appeals on loss of capacity in the specific instances set out. Clark, "The Texas Workmen's Compensation Act," Vol. 22, Vernon's Annotated Civil Statutes of Texas, Annotated, Commentary, page XL. Section 12c makes no distinction between specific and general injuries, and we are unwilling to write such a distinction into the statute. The fact that the Legislature has applied different methods in compensating general and specific injuries cannot be said to alter the clear terms of § 12c.

Sowell's other points, if sustained, would entitle him to a remand of the case to the trial court for a new trial. It has already been determined that the cause must be remanded. It is unlikely that the same problems will arise on a new trial, and hence we need not write on those points.

The judgments of the trial court and the Court of Civil Appeals are reversed and the cause is remanded to the trial court.

CULVER, Justice (dissenting).

In this case Sowell pleaded that he had no existing bodily incapacity, but that if he

were mistaken in that respect then the same was aggravated, accelerated and lighted up by such injury. On the other hand the Insurance Company pleaded that if the plaintiff had any incapacity the same was not due to the injury but due solely to the bodily condition, infirmities and injuries existing independently of the alleged injury and in the alternative if there was any incapacity it was not due to the alleged injury but to previous compensable injuries. In my view the case was submitted to the jury in accordance with the pleadings and the proof.

Sowell objected to Issue No. 16 on the ground that it contained the word "solely" for the reason that "[it] thereby precluded the jury in answering such issue from taking into consideration, in determining the percentage of incapacity due to the alleged injury of November 12, the incapacity plaintiff sustains or has sustained by reason of the injury of November 12, 1960, acting in conjunction with prior or subsequent diseases or congenital conditions or prior or subsequent injuries sustained under circumstances which do not authorize the application of Section 12(c) of Article 8306 thereto."

In my opinion the elimination of the word "solely" from the issue would not effect any change in the sense and meaning of the issue. I can see no distinction between inquiring what percentage of the incapacity is due *solely* to the alleged injury and what percentage of the incapacity is due to the alleged injury, particularly when taken in connection with the definition of injury which is quoted in the Court's opinion and to which no objection was leveled. As pointed out in the Court's opinion the word was used apparently to distinguish the injury in question from previous compensable injuries that Sowell had sustained. But that is the point on which this case is reversed and remanded, because as the Court says, the word "solely" "gave an overreaching effect to the issue."

Sowell requested in his objections to the charge the submission of a special issue inquiring as to what percentage of his present incapacity resulted from the prior compensable injuries of 1956. The request was not made in accordance with Rule 273, Rules of Civil Procedure. Of course the issue is not an ultimate one but is evidentiary and ordinarily a defensive one. Traders & General Ins. Co. v. Watson, 131 S.W. 2d 1103, Tex.Civ.App. The Court said it would be better to submit that issue to the jury. What I understand the Court to be saying is if you subtract the percentage of the disability caused by the previous injuries from his total incapacity it would leave the incapacity sustained by the plaintiff as a result of the injury of November 12th. I do not believe that method is sound. The ultimate question in this case is what was the incapacity caused by the injury in question. In my opinion Sowell failed to raise any valid objections to the Court's charge as given.

So far as the points discussed in the opinion of the Court are concerned I would affirm the judgments of the courts below.